UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CATHERINE CARLSON,

Plaintiff,

-v-

GENEVA CITY SCHOOL DISTRICT, BOARD
OF EDUCATION OF THE GENEVA CITY
SCHOOL DISTRICT, DAVID D. PULLEN,
MICHAEL SIMON, ROBERT C. YOUNG, JR.,
and CARMINE CALABRIA,

Defendants.

DECISION AND ORDER

08-CV-6202 CJS

APPEARANCES

For Plaintiff:              Annette M. Gifford, Esq.
                            Thomas & Solomon LLP
                            693 East Avenue
                            Rochester, New York 14607

For Defendants:             Frank W. Miller, Esq.
                            Law Firm of Frank W. Miller
                            6575 Kirkville Road
                            East Syracuse, New York 13057

INTRODUCTION

This is an action alleging claims pursuant to Title VII of the Civil Rights Act of 1964

("Title VII), as amended, 42 U.S.C. § 2000e *et seq*., the Americans With Disabilities Act

("ADA"), 42 U.S.C. § 12101 *et seq*., the Family Medical Leave Act ("FMLA"), 29 U.S.C. §

2601 *et seq*., the New York Human Rights Law ("NYHRL"), Executive Law § 290 *et seq*.

, as well as various tort claims under New York State law.  Now before the Court is

Defendants' motion (Docket No. [#22]) to dismiss, or for summary judgment.  For the reasons that follow, the application is granted in part and denied in part, and Plaintiff is granted leave to amend some of the claims.

BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's Complaint ("the Complaint") in this action.  At all relevant times, Catherine Carlson ("Plaintiff") was employed by the Geneva City School District as a Media Library Specialist at Geneva High School; defendant David D. Pullen ("Pullen") was Principal at Geneva High School; defendant Carmine Calabria ("Calabria") was Assistant Principal at Geneva High School; defendant Michael Simon ("Simon") was Administrator of Human Resources and Sexual Harassment Complaint Officer for the Geneva City School District; and defendant Robert C. Young, Jr. ("Young") was Superintendent of the Geneva City School District.

Plaintiff alleges that Pullen sexually harassed her, and that when she complained, all of the defendants retaliated against her in various ways.  Plaintiff summarizes her claims as follows:

> Ms. Carlson, who worked as a tenured Library Media Specialist at Geneva High School, began experiencing unwelcome, sexually harassing behavior from the High School principal, David Pullen (hereinafter, "Mr. Pullen") in or around 2005 ([Complaint] ¶¶ 29, 37-50).  Mr. Pullen's conduct included making sexually suggestive comments to Ms. Carlson about her clothing, following her in the school hallways, trying to hold her hand, suggesting to Ms. Carlson that they get an apartment together, and becoming angry and yelling at Ms. Carlson when she rebuffed [his] advances (Id. ¶¶ 39-50).
>
> After enduring Mr. Pullen's harassing behavior for many months out of fear of retaliation if she complained, by November 2006, Mr. Pullen's behavior had escalated to the point where Ms. Carlson was prompted to make

complaints about his harassing behavior to defendants and to her Union President (Id. ¶¶ 61-65). Within days after Ms. Carlson requested copies of Geneva's Sexual Harassment Policy and Complaint Forms, Mr. Pullen, in retaliation for Ms. Carlson's complaints about him, filed a false charge of sexual harassment against her (Id. ¶¶ 66-74). Defendants then placed Ms. Carlson, but not Mr. Pullen, on administrative leave and deleted emails from Ms. Carlson's school email account (Id. ¶¶ 69-72). After Ms. Carlson filed her formal Sexual Harassment Complaint against Mr. Pullen on December 4, 2006 (See Affirmation of Annette Gifford at ¶ 3 [hereinafter "Gifford Aff."]), Mr. Pullen filed an amended Sexual Harassment Complaint against Ms. Carlson on December 5, 2006, which was filled with false, malicious and defamatory statements, claiming nine separate instances of harassment (Compl. ¶¶75-81).

Defendants then embarked upon an investigation of the sexual harassment charges during which they attacked Ms. Carlson's professional and personal reputation by spreading false, malicious and defamatory statements about Ms. Carlson that caused others to believe that she had sold or provided drugs or alcohol to students and inappropriately touched or had sex with underage students (Id. ¶¶ 82-99).

After defendants concluded their investigation and allowed Ms. Carlson to return back to work from administrative leave on or about December 18, 2006, they continued their retaliation against her by subjecting her to new rules and restrictions and subjecting her to escalating disciplinary measures, culminating in her removal from her position as a High School Media Library Specialist and her placement in a less desirable position outside her tenure area teaching Structured Studies (essentially a form of in-school suspension) at the Middle School. First, defendants subjected Ms. Carlson to new rules and restrictions that did not apply to other faculty members by restricting the number of times she was permitted to leave the library, monitoring her use of bathrooms, monitoring her movements in and out of the library with a security camera and reprimanding her for leaving the library more often than the allotted number of times (Id. ¶¶ 102-108). Defendants also undermined Ms. Carlson's authority over the students by placing new restrictions on students' use of the library and reprimanding Ms. Carlson for actions which were previously permitted, such as allowing a student without a locker to store his jacket in the library (Id. ¶¶ 109-111). Defendants thereafter issued four separate letters of criticism against Ms. Carlson in January and March 2007 which were placed in her personnel file (Id. ¶¶ 112-118).

In March 2007, Ms. Carlson filed a charge of discrimination with the EEOC against defendants (Docket No. 22-5). In or about April 2007, defendants gave Ms. Carlson a false and negative annual performance evaluation and subsequently placed her on administrative leave beginning in or about May

2007 and continuing until June 2007 (Compl. ¶¶ 127-128). On June 11, 2007, defendants filed charges against Ms. Carlson pursuant to New York Education Law § 3820-a ("Ed. Law") and thereafter removed her from her position as High School Library Media Specialist and placed her in a less desirable position teaching Middle School Structured Studies (Compl. ¶¶ 129-136).

(Plaintiff's Memo of Law [#23] at 1-3).

On May 5, 2008, Plaintiff commenced this action, asserting the following claims: 1) discrimination and retaliation under Title VII and NYHRL; 2) discrimination under the ADA; 3) violation of the FMLA; 5) defamation; 6) slander; 7) libel; 8) prima facie tort; and 9) intentional infliction of emotional distress ("IIED"). (Complaint at 19-21). Attached to the Complaint are Pullen's sexual harassment complaints against Plaintiff (Complaint, Exhibit A), and several disciplinary letters issued to Plaintiff by Calabria and Young. (Complaint, Exhibit B).

On May 22, 2009, Defendants filed the subject motion [#22] to dismiss and for summary judgment. Defendants primarily seek dismissal pursuant to Rule 12(b)(6), but add that "[s]ummary judgment is also appropriate at this early juncture because the application of the controlling law to the undisputed facts demonstrates that the claims asserted in the Complaint lack merit, and the limited facts beyond the pleadings relied upon to support the summary judgment motion are incontrovertible." (Defendants' Memo of Law [#22-5] at 24). The "limited facts beyond the pleadings" to which Defendants refer is an affidavit from Superintendent Young, attesting to the fact that the Geneva City School District was served with Plaintiff's EEOC complaint on March 23, 2007, and was not served with any other type of notice of claim prior to the commencement of this action. (Young Affidavit [#22-4]). A copy of Plaintiff's EEOC complaint, which appears to have been filed

with the EEOC on March 9, 2007, is attached to Young's affidavit. Otherwise, Defendants' motion is based on the pleadings.

Defendants' motion contends the following: 1) all of Plaintiff's state-law claims must be dismissed, because Plaintiff did not comply with New York General Municipal Law § § 50-e and 50-i or New York Education Law § 3813; 2) the state-law claims are barred by the one-year statute of limitations found in Education Law § 3813; 3) the IIED cause of action must be dismissed because it fails to state a claim, is barred by the Worker's Compensation Law, and cannot be asserted against a municipality; 4) the prima facie tort cause of action must be dismissed because it fails to state a claim; 5) the causes of action for defamation, libel, and slander fail to state a claim; 6) the Board of Education should be dismissed from the action, since the School District is the real party in interest; 7) the Title VII and ADA claims must be dismissed as against the individual defendants; 8) the ADA cause of action does not state a claim; 9) the FMLA cause of action does not state a claim; 10) any of the discriminatory or retaliatory acts alleged under Title VII that occurred more than three-hundred days prior to the EEOC complaint are time-barred; 11) the Complaint does not state a claim for hostile environment or *quid pro quo* discrimination; and 12) Plaintiff cannot rely on the same conduct to support both a hostile environment claim and a retaliation claim.

Plaintiff opposes every aspect of Defendants' motion.  In that regard, Plaintiff contends: 1) the Complaint states claims under Title VII for a hostile environment and retaliation; 2) the Title VII claims are timely under the continuing violation doctrine, and are reasonably related to the claims contained in the EEOC complaint; 3) the Complaint states

claims under the ADA and FMLA, and to the extent that it does not, Plaintiff should be permitted to amend the Complaint; 4) the causes of action for defamation, libel, slander, IIED, and prima facie tort are adequately pleaded claims for which relief can be granted, and to the extent that they do not, Plaintiff should be permitted to amend the Complaint; 5) the state-law claims against the individual defendants are timely under New York's three-year statute of limitations contained in New York Civil Practice Law and Rules § 214(2); 6) the state-law claims against the municipal defendants are timely under the continuing violation doctrine; 7) Plaintiff complied with the state-law "notice of claim" requirements by filing her internal discrimination complaint and by service of her EEOC complaint; and 8) the Board of Education is a proper defendant in this action. In support of her opposition to Defendants' motion, Plaintiff submitted, *inter alia*, an affirmation from her attorney, Annette Gifford, Esq., and a copy of the sexual harassment complaint that she filed with the Geneva City School District on December 4, 2006. (Docket No. [#24]).[1]

On December 10, 2009, counsel for the parties appeared before the undersigned for oral argument.

## DISCUSSION

Defendants' motion is brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). With regard to the Rule 12(b)(1) application to dismiss for lack of jurisdiction, it is well settled that,

---

[1]On July 7, 2009, Defendants filed a reply memorandum [#30].

[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.

*Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir.2000) (citations omitted). The notice of claim provisions at issue in this action are jurisdictional in nature. *See, Peek v. Williamsville Bd. of Educ.*, 221 A.D.2d 919, 920, 635 N.Y.S.2d 374, 376 (4th Dept. 1995) ("The failure of plaintiff to file a timely notice of claim, or to apply within the statutory period for leave to file a late notice of claim, is jurisdictional and precludes his causes of action[.]") (citing, *inter alia*, Education Law § 3813[2]).

With regard to the 12(b)(6) application to dismiss for failure to state a claim, the legal standard to be applied is also clear:

Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S.544, 555, 127 S.Ct. 1955, 1964-65 (2007); *see also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir.

2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,'

which obliges a pleader to amplify a claim with some factual allegations in those contexts

where such amplification is needed to render the claim plausible[,]" as opposed to merely

conceivable.), *reversed on other grounds, Ashcroft v. Iqbal*, 129 S.Ct.1937 (2009).  When

applying this standard, a district court must accept the allegations contained in the

complaint as true and draw all reasonable inferences in favor of the nonmoving party.

*Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

The Court is limited as to what evidence it can consider in ruling upon a 12(b)(6)

motion:

> In considering a motion under Fed.R.Civ.P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint. If, on such a motion, matters outside the pleading are presented to and not excluded by the court, the court should normally treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56.  In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.

> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.  In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citations and internal quotation marks

omitted).

When in connection with a 12(b)(6) motion, matters outside the pleadings are

presented, the Court may either exclude them, or may consider them and treat the motion

as one for summary judgment. FRCP 12(d).  If the court chooses the latter course, "[a]ll

parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. However, summary judgment is rarely appropriate prior to discovery. *See, Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir.2003) ("[O]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.").

Even if a court grants a motion to dismiss, the plaintiff may request leave to amend the complaint to correct the deficiencies:

> It is the usual practice upon granting a motion to dismiss to allow leave to replead. Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion. Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.

*Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted), *cert den.*, 503 U.S. 960, 112 S.Ct. 1561 (1992); *see also*, *Panther Partners Inc. v. Ikanos Communications, Inc.*, No. 08-3398-cv, 2009 WL 2959883 at *4 (2d Cir. Sep. 17, 2009) ("Granting leave to amend [would be] futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim.") (unpublished; citation omitted).

### New York's Notice of Claim Requirements

At the outset, Defendants maintain that the Court lacks subject-matter jurisdiction over Plaintiff's state-law claims, because Plaintiff did not comply with the notice of claim

requirements in Education Law § 3813, subsections (1) and (2).  Subsection (1) applies to

Plaintiff's NYHRL claims, while subsection (2) applies to her tort claims.[2]

*Education Law § 3813(1): NYHRL Discrimination Claims*

Employment discrimination claims that are brought against a school district, board

of education, or officer of a school district, are subject to the notice of claim requirements

contained in Education Law § 3813(1).  The statute states, in relevant part:

> No action or special proceeding, for any cause whatever . . . involving the
> rights or interests of any district or any such school shall be prosecuted or
> maintained against any *school district, board of education*, board of
> cooperative educational services, school provided for in article eighty-five of
> this chapter or chapter ten hundred sixty of the laws of nineteen hundred
> seventy-four *or any officer of a school district, board of education, board of
> cooperative educational services, or school provided for in article eighty-five
> of this chapter or chapter ten hundred sixty of the laws of nineteen hundred
> seventy-four* unless it shall appear by and as an allegation in the complaint
> or necessary moving papers that a written verified claim upon which such
> action or special proceeding is founded was presented to the governing body
> of said district or school within three months after the accrual of such claim,
> and that the officer or body having the power to adjust or pay said claim has
> neglected or refused to make an adjustment or payment thereof for thirty
> days after such presentment.

Education Law § 3813(1) (McKinney 2009) (emphasis added).  "It is well settled that

Education Law § 3813(1) is a statutory condition precedent to a petitioner's bringing of a

proceeding against a school district or board of education, and a petitioner's failure to

comply is a fatal defect mandating dismissal of the action." *Angarano v. Harrison Cent.

Sch. Dist.*, 14 Misc.3d 1217(A), 836 N.Y.S.2d 483 (table), 2007 WL 102348 at *4 (N.Y.Sup.

Jan. 16, 2007) (Lippman, J.) (citations omitted).  Moreover, "[a]lthough substantial

---

[2]Employment discrimination claims are not "torts" under New York State law. *See, Amorosi v. South Colonie Indep. Cent. Sch. Dist.*, 9 N.Y.3d  367, 849 N.Y.S.2d 485, 488 (2007).  Consequently, such claims are not subject to the notice of claim requirements in Education Law § 3813(2). *Id.*

compliance with the statute regarding the degree of descriptive detail in the notice of claim is sufficient, the statutory requirements mandating notification to the proper public official must be fulfilled." *Id*. at *5 (citations omitted). "The essential elements to be included in the notice are the nature of the claim, the time when, the place where and the manner in which the claim arose and, where an action in contract is involved, the monetary demand and some explanation of its computation." *Parochial Bus Systems, Inc. v. Board of Educ. of City of New York*, 60 N.Y.2d 539, 547, 470 N.Y.S.2d 564, 567 - 568 (1983) (citations omitted). Even if a notice contains sufficient information, it must still be "presented to the governing body of said district," and the failure to do so "is a fatal defect mandating dismissal of th[e] action." *Id*., 60 N.Y.2d at 548, 470 N.Y.S.2d at 568. "The statutory prerequisite is not satisfied by presentment to *any other individual or body*, and, moreover, the statute permits no exception regardless of whether the Board had actual knowledge of the claim or failed to demonstrate actual prejudice." *Id*. (emphasis added).

With regard to the text of § 3813(1) set forth above, the instant case does not involve a board of cooperative educational services or a "school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four." Consequently, in this action, § 3813(1) only applies to those Defendants which are a school district, a board of education, or who are an officer of a school district or board of education. Clearly, the Geneva City School District and the Board of Education fit within that definition.

As for Young, Pullen, Calabria and Simon, they are not covered by § 3813(1) unless they are "school officers." The term "school officer" is defined as follows:

> The term "school officer" means a clerk, collector, or treasurer of any school district; a trustee; a member of a board of education or other body in control of the schools by whatever name known in a union free school district, central school district, central high school district, or in a city school district; a superintendent of schools; a district superintendent; a supervisor of attendance or attendance officer; or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system.

Education Law § 2(13) (McKinney 2009). Based upon this definition, it is obvious that Superintendent Young is a school officer. Moreover, the Court finds that Simon also comes within this definition, since he holds the title of Sexual Harassment Complaint Officer for the Geneva City School District.

On the other hand, the Court determines that neither Pullen nor Calabria are school officers. In that regard, this Court is aware of only two district court decisions which have interpreted the term "school officer" in connection with § 3813(1), and both concluded that a school principal is not a school "officer," as defined by the Education Law. *See, Spencer v. City of New York*, No. 06 Civ. 2852(KMW), 2007 WL 1573871 at *3 (S.D.N.Y. May 30, 2007) (Notice of claim provision in § 3813(1) does not apply to school employees who are not school officers within the meaning of the statute); *Richards v. Calvet*, No. 99 Civ.12172RJHMHD, 2005 WL 743251 at *13 (S.D.N.Y. Mar. 31, 2005) (Notice of claim under § 3813(1) was not required before suing school principal, who was not a school officer within the meaning of § 3813(1)). The Court agrees, based on its reading of § 3813(1), that a principal is not a school officer. In the first place, it is clear that a principal is not an officer of a board of education. Moreover, although a principal is the administrative head of a particular school, such position is not a district-wide office. Further, the statutory text of § 3813(2) indicates that administrators, teachers, and other

12

school employees are *not* included within the scope of § 3813(1): "Notwithstanding anything to the contrary hereinbefore contained in this section, no action or special proceeding founded upon tort shall be prosecuted or maintained against <u>any of the parties named in this section</u> *or against any teacher or member of the supervisory or administrative staff or employee . . . .*" Education Law § 3813(2) (McKinney 2009) (emphasis added). Such wording indicates that administrators, teachers, and other school employees, are not covered by § 3813(1). Accordingly, a principal is not an "officer of a school district."

The Court therefore finds that Plaintiff was required to comply with the notice and pleading requirements of § 3813(1) with regard to her NYHRL claims against the School District, the Board of Education, Young, and Simon, but not as to her NYHRL claims against Pullen and Calabria. Consequently, the motion to dismiss for failure to comply with § 3813(1) is denied as to Pullen and Calabria.

Moreover, Defendants contend that Plaintiff also failed to serve the notice required by § 3813(1), and that the Court cannot now grant Plaintiff leave to file a late notice, since the one-year limitations period for such claims has now passed. *See*, Education Law § 3813(2-a). Plaintiff responds that she substantially complied with the notice requirement, by serving her internal harassment complaint and her EEOC complaint, and that she should be permitted to amend the Complaint to plead compliance with § 3813(1). Specifically as to service, Plaintiff alleges that she served the internal harassment complaint "with the Geneva City School District" (Gifford Affidavit at ¶ 3), and Young avers that the EEOC complaint was served on him on March 23, 2007. (Young Affidavit at ¶ 4).

13

However, even assuming that Plaintiff's internal complaint and EEOC complaint contained sufficient information to satisfy § 3813(1), neither was served on the "governing body of [the] district," which is the Board of Education.  Moreover, "service upon a district superintendent rather than the "governing body of [the] district or school" (in this case the Board of Education) does not establish compliance with Education Law § 3813(1)." *McCann v. State*, 181 Misc.2d 284, 292, 694 N.Y.S.2d 328, 334 (N.Y.Ct.Cl.,1999).  This failure to serve the appropriate body is fatal to Plaintiff's NYHRL claim against the School District,  the Board of Education, Young, and Simon.  Consequently, the motion to dismiss is granted as to the NYHRL claim against the School District, the Board of Education, Young, and Simon, for failure to comply with § 3813(1).   The dismissal is granted without leave to amend, since it does not appear that Plaintiff can cure this deficiency.

Defendants further maintain that the remaining NYHRL claims against Pullen and Calabria are time-barred. (Defendants' Memo of La at 6) ("[A] one-year statute of limitations applies to the state law claims asserted in the Complaint.").  Defendants are correct that discrimination claims brought against a school district, board of education, or officer of a school district, pursuant to the New York Human Rights Law, are subject to a one-year statute of limitations. Education Law § 3813(2-b); *Amorosi*, 849 N.Y.S.2d at 489.  In that regard, § 3813(2-b) states, in relevant part:

> Except as provided in subdivision two of this section and, notwithstanding any other provision of law providing a longer period of time in which to commence an action or special proceeding, no action or special proceeding shall be commenced against *any entity specified in subdivision one of this section* more than one year after the cause of action arose[.]

Education Law § 3813(b-2) (McKinney 2009) (emphasis added). However, as previously discussed, school principals are not entities covered by § 3813(1), and the one-year limitations period does not apply to them. Instead, the Court finds that the NYHRL claims against Pullen and Calabria are subject to a three-year statute of limitations, pursuant to New York Civil Practice Law and Rules ("CPLR") § 214[2]. *See, Kimmel v. State*, 49 A.D.3d 1210,1211, 853 N.Y.S.2d 779, 780 (4th Dept. 2008) (Stating that limitations period for NYHRL employment discrimination claims is three years, citing CPLR § 214[2]). Consequently, Defendants' application to dismiss the NYHRL claims against Pullen and Calabria as time-barred is denied.

### *Education Law § 3813(2)*: *Tort Claims*

Pursuant to Education Law § 3813(2), tort claims against a school district, board of education, or employee of a school district, are subject to the notice-of-claim requirements in New York General Municipal Law § § 50-e and 50-i. Education Law § 3813(2). In that regard, Section 50-e requires that a claimant prepare a written, sworn claim, describing the nature of the claim, the time and date the claim arose, and the items of damage or injuries sustained. Municipal Law § 50-e(2). Section 50-e further directs that such notice must be served "within ninety days after the claim arises." Municipal Law § 50-e(1)(a). The statute permits applications for late service of notice; however, at this date, any such application in the instant case would be untimely. *See*, Municipal Law § 50-e(5) ("The extension shall not exceed the time limited for the commencement of an action by the claimant.").

Additionally, General Municipal Law § 50-i imposes certain conditions that must be met before commencing an action or proceeding against a school district, board of education, or school district employee:

> No action or special proceeding shall be prosecuted or maintained . . . unless, (a) a notice of claim shall have been made and served . . . in compliance with section fifty-e of this chapter, (b) it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice and that adjustment or payment thereof has been neglected or refused, and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based; except that wrongful death actions shall be commenced within two years after the happening of the death.

General Municipal Law § 50-i(1) (McKinney 2009).

In the instant case, Plaintiff is asserting the following tort claims: Defamation, libel, slander, IIED, and prima facie tort. However, it is clear that Plaintiff has not satisfied all of the notice of claim requirements, since the Complaint does not allege that a notice was served as required by Section 50-e, or that at least thirty days have elapsed since the service of such notice and that adjustment or payment thereof has been neglected or refused.

Plaintiff, though, seeks leave to amend the Complaint to plead compliance with the statute. In that regard, Plaintiff maintains that she substantially complied with Section 50-e in two separate ways: By filing her internal harassment complaint with the School District; and by serving her EEOC complaint on Young, the District Superintendent.[3]

---

[3]Section 3813(2), unlike § 3813(1), permits service of a notice of claim on a school superintendent: "Curiously, subdivision 2 of section 3813, referring to tort actions or proceedings, expressly incorporates section 50-e of the General Municipal Law which, in turn, provides that service of a notice of claim shall be valid, notwithstanding defects in the manner of service, "if the notice is actually received by a proper person within the time specified". (Subd. 3, par. [c] [emphasis added].) Contrawise, however, subdivision 1, of section

With regard to Plaintiff's internal sexual harassment complaint, the Court finds that the complaint could not satisfy Section 50-e with regard to the subject tort claims. That is because the internal complaint, which was submitted to an as-yet-unidentified person at the School District on December 4, 2006, pertains only to alleged sexual harassment by Pullen on or before November 2006, while the tort claims allegedly arose later. Since the internal complaint does not give notice of the tort claims at issue here, it does not substantially comply with Section 50-e. *See, O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358, 429 N.E.2d 1158, 1160 (1981) ("The test of the notice's sufficiency is whether it includes information sufficient to enable the city to investigate the claim.") (citations omitted); *Ingle v. New York City Transit Authority*, 7 A.D.3d 574, 575, 777 N.Y.S.2d 154, 155 (2d Dept. 2004) ("Whether the notice of claim substantially complies with the requirements of the statute depends on the circumstances of each case.") (citations omitted).

As for Plaintiff's EEOC complaint, it was served on Young[4] on March 23, 2007. (Young Affidavit, Exhibit A). The EEOC complaint recites that Plaintiff asked the District for a copy of the District's sexual harassment complaint form, and that subsequently she was subjected to a hostile work environment and retaliation. (Gifford Affidavit, Exhibit A).

---

3813 . . . contains no such reference to the General Municipal Law or to a similar saving provision regarding an "actually received" notice." *Parochial Bus Systems, Inc.* **v.** *Board of Educ. of City of New York*, 60 N.Y.2d at 549, 470 N.Y.S.2d at 569, n. 3.

[4]It appears that service of a 50-e notice on Young would be sufficient service. In that regard, Section 50-e states, in relevant part, that service may be made "to the person designated by law as one to whom a summons in an action in the supreme court issued against such corporation may be delivered." Municipal Law § 50-e(3)(a). Service of a summons on a school district is to be made "to a school officer, as defined in the education law." CPLR § 311(a)(7). Education Law § 2(13) defines a "school officer" to include "a district superintendent."

The EEOC complaint further indicates that a retaliatory investigation was commenced into Plaintiff's "character and job performance," and that, essentially, she was falsely accused of selling drugs to students and of having sex with students. *Id*. Such allegations may be sufficient to substantially comply with § 50-e. Accordingly, the Court will permit Plaintiff to amend the Complaint to allege compliance with § 3813(2). However, for other reasons discussed further below, amendment of the Complaint would be futile as to some of the tort claims.

<u>Timeliness of the Tort Claims</u>

Generally, under New York State law, claims for defamation, libel, and slander, and IIED are subject to a one-year statute of limitations. *See, McKenzie v. Dow Jones & Co., Inc.*, No. 08-4096-cv, 2009 WL 4640668 at *2 (2d Cir. Dec. 9, 2009) ("Under New York law, the statute of limitations for a defamation claim is one year.") (unpublished) (citing CPLR § 215(3)); *Tornheim v. Federal Home Loan Mortg. Corp.*, No. 98-9505, 1999 WL 753328 at *1 (2d Cir. Sep. 7, 1999) (unpublished) ("There is a one-year statute of limitations for claims alleging intentional infliction of emotional distress and invasion of privacy."). Claims for prima facie tort in New York are generally subject to a three-year statute of limitations, although there is some authority that such claims are subject to a one-year limitations period. *See, McKenzie v. Dow Jones & Co., Inc.*, 2009 WL 4640668 at *2. However, where tort claims are asserted against a school district, board of education, or "any teacher or member of the supervisory or administrative staff or employee," the applicable limitations period is "one year and ninety days after the happening of the event upon which the claim

is based." Education Law § 3813(2); Gen. Mun. Law § 50-i(1)[5]; *see also, Peek v. Williamsville Bd. of Educ.*, 221 A.D.2d 919, 920, 635 N.Y.S.2d 374, 375 (4th Dept. 1995) ("General Municipal Law § 50-i(1)(c) and Education Law § 3813(2) require actions in tort to be commenced within one year and 90 days of the accrual of the claim. Education Law § 3813(2-b) requires all other actions to be commenced within one year of the accrual of the claim.").

There is disagreement among courts in this Circuit as to whether state-law limitations periods are tolled by the filing of an EEOC complaint. The majority view, though, among district courts, which has also been stated by a Second Circuit panel in an unpublished decision, is that state-law limitations periods are *not* tolled by the filing of an EEOC complaint. *See, Ashjari v. Nynex Corp.*, No. 98-9411, 182 F.3d 898, 1999 WL 464977 at *1 (2d Cir. Jun. 22, 1999) (unpublished) ("[A]n EEOC charge does not toll the time for state law claims arising from the same events.") (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 465-66, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), other citation omitted).

In this action, the Complaint was filed on May 5, 2008. By the Court's calculation, one year and ninety days prior to that date is February 4, 2007. Consequently, any tort causes of action arising from events that occurred prior to February 4, 2007, are time-barred. Accordingly, Plaintiff's tort claims involving the alleged sham investigation

---

[5]Education Law § 3813(2-b) establishes a one-year statute of limitations, "[e]xcept as provided in subdivision two of this section." Subdivision two directs that "[e]very such action shall be commenced pursuant to the provisions of section fifty-i of the general municipal law," which sets the one-year-and-ninety-day limitations period.

conducted in November and December 2006, as well as claims concerning letters of reprimand issued in January 2007, are time-barred.

### *Legal Sufficiency of the Tort Claims*

The Court also finds that some of the tort causes of action fail to state a claim upon which relief can be granted.

With regard to claims for defamation, which includes libel and slander, "[t]o state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Gargiulo v. Forster & Garbus Esqs.*, — F.Supp.2d —, 2009 WL 2868727 at *3 (S.D.N.Y. Sep. 3, 2009) (citations omitted). The defamatory statements must be pleaded with some particularity. *See*, CPLR § 3016(a) ("In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally.").

Here, with regard to the defamation claims, it does not appear that Plaintiff has alleged all of the specific defamatory statements that were made. *See*, Complaint ¶ 113 ("The Criticism Letters contain false, malicious, libelous and defamatory statements, *including the following*, to wit:") (emphasis added). In light of the Court's ruling as to the statute of limitations, only defamatory statements made after February 4, 2007 are actionable, and it is unclear which of the statements allegedly made after that date Plaintiff

is claiming were defamatory.[6]  Additionally, Plaintiff has not clearly specified which of the six defendants allegedly made defamatory statements about her.  Instead, the Complaint merely alleges that "*Defendants* violated their obligations under New York tort law." *See, e.g.*, Complaint ¶ 150 (emphasis added).  Accordingly, the motion to dismiss the defamation, libel, and slander causes of action is granted.  However, Plaintiff is granted leave to amend the Complaint to replead such of those claims as would be timely.

Under New York law, a claim for prima facie tort has four elements: "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful." *Curiano v. Suozzi*, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469 (1984).  The plaintiff must plead special damages, and that the defendant was solely motivated by disinterested malevolence. *Id.*  "[A] critical element of the cause of action is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages.  Such damages must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts." *Epifani v. Johnson*, 65 A.D.3d 224, 233, 882 N.Y.S.2d 234, 242 (2d Dept. 2009) (citations and internal quotation marks omitted).  Alleging "merely general damages for noneconomic loss" is insufficient. *Id.*; *see also, Von Ludwig v. Schiano*, 23 A.D.2d 789, 790, 258 N.Y.S.2d 661, 663 (2d Dept. 1965) ("The failure to itemize special damages does not render a cause of action insufficient . . . except in special cases where such damages are

---

[6]Defendants further contend that the Complaint fails to state defamation claims because the statements were not defamatory, the statements were opinions, and the statements were protected by the "common interest" qualified privilege.  Additionally, Defendants contend that Plaintiff has failed to plead special damages, though she would not need to do so if the statements were defamatory per se.  However, since the particular statements upon which Plaintiff is relying are unclear at this time, the Court declines to consider these arguments.

essential to the cause of action, as, for example, in an action based upon a prima facie tort.").

In this case, Plaintiff has not alleged that Defendants were motivated by disinterested malevolence, nor has she pleaded special damages. With regard to Defendants' alleged motivation, Plaintiff states: "The Complaint alleges that defendants' acts were for purposes of retaliation and were done with malice." (Plaintiff's Memo of Law at 20). However, the Second Circuit has stated that "prima facie tort requires that the acts complained of would otherwise be lawful but for defendant's disinterested malevolence," and that "racial harassment" is not "conduct that is otherwise lawful." *Chen v. U.S.*, 854 F.2d 622, 627, 629 (2d Cir. 1988) (citations and internal quotation marks omitted). Similarly, in the instant case, retaliating against Plaintiff for filing a discrimination complaint would not be "otherwise lawful conduct." Further, with regard to damages, Plaintiff alleges only that she suffered "severe pain and mental anguish," injury to her reputation, loss of unspecified wages from taking unpaid leave, loss of unspecified fringe benefits, and unspecified costs associated with "medical or therapeutic care." Consequently, the prima facie tort cause of action is dismissed for failure to state a claim. Moreover, since Plaintiff cannot plead that Defendants acted with disinterested malevolence, leave to replead is denied.

The law in New York State concerning claims for IIED is well-settled: "[I]n a cause of action for intentional infliction of emotional distress, a plaintiff must plead and prove four elements: (1) extreme and outrageous conduct; (2) the intentional or reckless nature of such conduct; (3) a causal relationship between the conduct and the resulting injury; and

(4) severe emotional distress." *Mitchell v. Giambruno*, 35 A.D.3d 1040, 1041, 826 N.Y.S.2d 788, 789 (3rd Dept. 2006) (citations omitted). Defamatory statements are generally not sufficiently extreme and outrageous to support an IIED claim. In *James v. DeGrandis*, 138 F.Supp.2d 402 (W.D.N.Y. 2001), the defendants widely disseminated false statements about a college soccer coach, accusing him of having improper sexual relationships with students, in order to have him fired from his coaching position, and to prevent him from being hired elsewhere. The court dismissed the IIED claim, stating that, "[e]ven a false charge of sexual harassment does not rise to the level of outrage required to recover on an intentional infliction of emotional distress claim under New York law." *Id.*, 138 F.Supp.2d at 421 (citation omitted). Similarly, false accusations of criminal conduct generally do not rise to the level of extreme and outrageous conduct that is necessary to support an IIED claim. In *La Duke v. Lyons*, 250 A.D.2d 969, 673 N.Y.S.2d 240 (3d Dept. 1998), the plaintiff nurse was terminated from her employment at a hospital, after being accused by co-workers of euthanizing a patient. The Appellate Division, Third Department, affirmed the dismissal of an IIED cause of action, stating: "[E]ven assuming the truth of the allegation that the employees intentionally relayed false information to the hospital, the conduct was not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress." *Id.*, 250 A.D.2d at 973, 673 N.Y.S.2d at 244 (citation omitted).

Here, Plaintiff alleges that her supervisors harassed her, and conducted an investigation into whether she had sex with students and sold them drugs. Such allegations are not sufficiently extreme and outrageous to support an IIED claim. Nor does

the Complaint give any indication that Plaintiff could sufficiently plead an IIED claim if given the chance. Accordingly, the IIED claim is dismissed, without leave to amend.

<u>Claims Against the Board of Education</u>

Defendants next maintain that Plaintiff may not maintain an action for damages against the Board of Education, and that the proper defendant is the School District. In that regard, Defendants cite *Nichiporuk v. Board of Education of the Palmyra-Macedon Central School District*, 415 F.Supp.2d 242, n. 1 (W.D.N.Y. 2006). However, as Plaintiff correctly notes, the section of the *Nichiporuk* case upon which Defendants rely stands only for the proposition that school board members cannot be sued in their official capacities for damages under 42 U.S.C. § 1983. Plaintiff is not asserting claims under § 1983. Moreover, boards of education may be sued for other causes of action. *See, e.g., Gulino v. New York State Educ. Dept*., 460 F.3d 361, 381 (2d Cir. 2006) (Holding that a board of education may be sued as an employer under Title VII). Defendants' motion to dismiss the claims against the Board of Education is therefore denied.

<u>Title VII Claims</u>

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations omitted), *abrogated on other grounds by Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199 (2nd Cir. 2006). However, "Title VII does not establish a 'general civility code' for the American workplace. Simple teasing, offhand comments, or isolated incidents of

offensive conduct (unless extremely serious) will not support a claim of discriminatory

harassment." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004) (citation omitted).

To establish a claim of hostile work environment discrimination, a plaintiff must show

that

> the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. Proving such a claim involves showing both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.

> In addition, the plaintiff must show that a specific basis exists for imputing the objectionable conduct to the employer. Where an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action. According to two 1998 Supreme Court cases, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), this inquiry differs where the harassment is attributed not to non-supervisory co-workers but to a supervisor with immediate or successively higher authority over the employee. *Burlington Indus.*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. In that circumstance, a court looks first to whether the supervisor's behavior culminated in a tangible employment action against the employee. If it did, the employer will, ipso facto, be vicariously liable. If no such tangible employment action is present, however, an employer will still be liable for a hostile work environment created by a supervisor unless the employer successfully establishes an affirmative defense. That defense requires the employer to show that (a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Fairbrother v. Morrison*, 412 F.3d 39, 48-49 (2d Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199 (2nd Cir. 2006).

The law to be applied when considering whether conduct was sufficiently severe and pervasive to support a hostile environment claim is well settled:

> Although isolated incidents ordinarily will not rise to the level of a hostile work environment, even a single incident of sufficient severity may so alter the terms and conditions of employment as to create such an environment. The matter of whether the conduct alleged was so severe or pervasive as to create an objectively hostile or abusive work environment, is to be decided based on the totality of the circumstances, in light of such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Where reasonable jurors could disagree as to whether alleged incidents of . . . harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law.

*Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 227 (2d Cir. 2004) (citations and internal quotations omitted).

Defendants contend that the Complaint fails, as a matter of law, to state a hostile-environment claim: "The Complaint references a small number of sexually related, or arguably sexually-related comments, and no physical touching. There is no way those allegedly harassing comments could satisfy the 'severe' prong." (Defendants' Memo of Law at 21-22). Defendants further contend that the alleged acts were not sufficiently pervasive. *Id*. at 22. The Second Circuit has stated the applicable test as follows:

> In *Harris* [*v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367 (1993)], the Supreme Court provided a nonexhaustive list of factors the factfinder should consider in determining whether a hostile work environment exists, including "the frequency of the discriminatory conduct; its severity; whether it is

26

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367. These four factors guide the factfinder in making what is ultimately a factual, not a legal, determination. The Supreme Court noted that whether sexual harassment alters the conditions of employment "is not, and by its nature cannot be, a mathematically precise test," *id*. at 22, 114 S.Ct. 367, and "can be determined only by looking at all the circumstances," *id*. at 23, 114 S.Ct. 367. "[N]o single factor is required." *Id*. Perhaps, "[a]s a practical matter" this standard may "let[ ] virtually unguided juries decide whether sex-related conduct engaged in (or permitted by) an employer is egregious enough to warrant an award of damages," but there is "no test more faithful to the inherently vague statutory language" that we are bound to apply. *Id*. at 24, 25, 114 S.Ct. 367 (Scalia, J., concurring).

We thus cautioned in *Richardson v. New York State Department of Correctional Service*, 180 F.3d 426 (2d Cir.1999), that hostile work environment claims present "mixed question[s] of law and fact" that are "especially well-suited for jury determination." *Id*. at 437 (internal quotation marks omitted).

*Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 605 (2d Cir. 2006) (citation omitted).

In this case, the Court finds that the Complaint states a plausible claim for hostile environment discrimination. In that regard, the Complaint alleges, *inter alia*, that Pullen, over a period of months, made repeated requests to Plaintiff to wear specific items of clothing for his pleasure, that he made repeated sexual comments, including asking Plaintiff to describe her most memorable sexual experience, that he attempted to hold Plaintiff's hand, and that he asked her to get an apartment with him. The Court declines to find that such allegations are not actionable as a matter of law.

Defendants also contend that some of Plaintiff's Title VII claims are time-barred. With regard to the timeliness of Title VII claims, it is undisputed that

[a]n aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the

27

alleged discriminatory act. *See Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 133 (2d Cir.2003) (citing 42 U.S.C. § 2000e-5(e)).

\*\*\*

When . . . a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct. For example, in the case of a hostile work environment claim, the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider "the entire time period of the hostile environment" in determining liability. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

\*\*\*

Other Title VII claims, such as those for termination or failure to promote, are based on "discrete acts," each giving rise to a separate cause of action. *Id*. at 114, 122 S.Ct. 2061. The law is clear that termination and promotion claims may not be based on discrete acts falling outside the limitations period. *Id*. Nevertheless, evidence of earlier [discrete acts of discrimination] may constitute relevant "background evidence in support of a timely claim[.]" *Id*. at 113, 122 S.Ct. 2061; *accord Bonner v. Guccione*, 178 F.3d 581, 599 (2d Cir.1999) (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)).

*Petrosino v. Bell Atlantic*, 385 F.3d at 219-220.

Here, with regard to Plaintiff's hostile environment claim, Defendants state that Plaintiff's EEOC complaint "reference[d] only allegedly unwelcome comments from the Defendant Pullen on a seemingly sporadic basis as far back as 2005, well over 300 days before the EEOC complaint was filed in March of 2007. Such events that took place more than 300 days prior to the filing of the EEOC complaint cannot be litigated now." (Defendants' Memo of Law at 19) (citations omitted). However, Defendants' memo does not argue that all of Pullen's alleged harassing behavior had stopped more than three-hundred days prior to the EEOC complaint. Moreover, the Complaint alleges that a single hostile environment began in 2005 and continued into 2006: "Commencing in the fall of 2005, and escalated by November 2006, defendants' individual and collective conduct

28

caused Ms. Carlson to be subjected to a working environment that was permeated with discriminatory intimidation, ridicule and insult." (Complaint ¶ 58).[7]   Accordingly, the Court finds that Plaintiff has adequately pleaded a timely hostile work environment claim.

As for Plaintiff's retaliation claims, Defendants state that "any . . . retaliatory conduct alleged to have taken place more than 300 days prior to the filing of the EEOC complaint" is time barred. (Defendants' Memo of Law at 18).  However, Defendants have not identified any particular retaliatory act that falls outside of the limitations period, *see, Id.*, nor does it appear to the Court that any of the complained-of acts of retaliation occurred more than three-hundred days prior to March 2007.  Instead, it appears that the alleged retaliation did not begin until November 2006. *See*, Complaint ¶ 61.  Consequently, while the Court agrees that acts of retaliation are discrete acts that must occur within three-hundred days of the EEOC complaint to be actionable, Defendants have not shown that any of Plaintiff's retaliation claims are time-barred.

---

[7]Plaintiff's memo of law indicates that Pullen, Young, and Simon all created the hostile environment. With regard to Young, Plaintiff states that he prevented her from pumping breast milk at some undisclosed time. (Complaint ¶ 55).  As for Simon, Plaintiff states that he made inappropriate remarks about her at some undisclosed time (Complaint ¶ 53) and in March 2008 (Id. ¶ 54).  It does not appear that these seemingly unrelated alleged actions by Young and Simon could be considered part of the same hostile environment allegedly created by Pullen.  Nor would these allegations by themselves be sufficient to state a hostile environment claim against Young or Simon.

Defendants also contend that the Complaint fails to state a *quid pro quo* discrimination claim.[8] However, the Complaint does not reference such a claim, nor does the Court read the Complaint as asserting such a claim.

Defendants further argue that Plaintiff's retaliation claim should be dismissed, since Plaintiff is relying "upon the same conduct to support [the] retaliation claim and [the] hostile environment claim." (Defendants' Memo of Law at 23). Defendants cite two cases in support of their argument, but the Court finds that both cases are factually inapposite. *Id* Moreover, the Court does not view the Complaint as relying upon the same conduct to support the hostile environment and retaliation claims. Instead, the Court understands the Complaint to allege that Pullen created a sexually hostile working environment between 2005 and late 2006, and that when Plaintiff complained, Defendants retaliated against her. Plaintiff also alleges that she was treated less favorably than Pullen, because both of them had sexual harassment complaints filed against them, but only she was disciplined. Accordingly, Defendants' motion to dismiss on this ground is denied.

Lastly with regard to the Title VII claims, Defendants maintain that the individual defendants cannot be sued under Title VII. The Court agrees, since it is clear that individuals cannot be sued under Title VII. *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir.

---

[8]*See, Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) ("Although the terms 'quid pro quo' and 'hostile work environment' do not appear in the text of Title VII, they are useful to distinguish between 'cases involving a threat which is carried out and offensive conduct in general. When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII. If, however, a claim involves only unfulfilled threats, it should be categorized as a hostile work environment claim which requires a showing of severe or pervasive conduct. The terms quid pro quo and hostile work environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility.") (citations omitted).

2000) ("[I]ndividuals are not subject to liability under Title VII.") (citation omitted). Consequently, the Title VII claims are dismissed against Pullen, Simon, Calabria, and Young.

### ADA and FMLA

Defendants maintain that the Complaint fails to state a claim under the ADA or FMLA. The legal standards for such claims are clear.

> In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show (a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability.

*Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (citation omitted). With regard to the FMLA, to establish a prima facie case,

> a plaintiff must demonstrate: (1) that she is an 'eligible employee' under the FMLA; (2) that defendants constitute an employer under the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) that defendants denied her benefits to which she was entitled by the FMLA.

*Avila-Blum v. Casa de Cambio Delgado, Inc.*, 519 F.Supp.2d 423, 427 (S.D.N.Y. 2007) (citation and internal quotation marks omitted). The Court agrees with Defendants that the Complaint presently fails to state either type of claim.

Defendants also correctly assert that Title I of the ADA does not permit actions against defendants in their individual capacities. Therefore, Plaintiff could not maintain an ADA claim against the individual Defendants in any event.

Defendants further maintain that the ADA claim must also be dismissed because Plaintiff did not file a complaint with the EEOC. On this point, Defendants are correct that

"the ADA require[s] a plaintiff to file an administrative charge of discrimination with the EEOC no more than 300 days after the alleged discriminatory act to maintain an action in federal court." *Ellis v. Delphi Corp.*, No. 09-CV-6222, 2009 WL 3671371 at *2 (W.D.N.Y. Oct. 29, 2009) (citations omitted). Here, there is no indication that Plaintiff filed such a complaint under the ADA, nor does it appear that an ADA claim would be reasonably related to the Title VII complaint that Plaintiff filed with the EEOC. In that regard,

> [c]laims not raised in an EEOC complaint . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency. The Second Circuit considers claims reasonably related when (1) the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; (2) it alleges retaliation for filing the EEOC charge; or (3) the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.

*Bobbitt v. New York City Health and Hosp. Corp.*, No. 08 Civ. 10765(SAS), 2009 WL 4975196 at *7 (S.D.N.Y. Dec. 22, 2009) (footnotes, citations, and internal quotation marks omitted). The Court finds that Plaintiff's ADA claim would not fall under any of these exceptions.[9]

Accordingly, the ADA and FMLA causes of action are dismissed. However, the Court will permit Plaintiff an opportunity to amend the Complaint with regard to the FMLA claims. Leave to replead the ADA claim is denied for the reasons stated above.

---

[9]To the extent that Plaintiff's attempted ADA claim involves allegations that Defendants retaliated against her by restricting her ability to use the restroom or otherwise attend to her personal needs (Complaint ¶ ¶ 55, +102-108), such claims may be actionable as part of her Title VII retaliation claim, but not as a separate ADA claim.

CONCLUSION

Defendants' motion [#22] is granted in part and denied in part. The motion is granted as follows: 1) the NYHRL claims against the School District, Board of Education, Young, and Simon, are dismissed without leave to replead; 2) the IIED claims and prima facie tort claims are dismissed without leave to replead; 3) any claims for defamation, libel, slander that arose prior to February 4, 2007, are dismissed without leave to replead; 4) any claims for defamation, libel, slander, that arose after February 4, 2007, are dismissed with leave to replead; 5) the Title VII claims against Young, Simon, Pullen, and Calabria, are dismissed without leave to replead; 6) the ADA claims are dismissed without leave to replead; and 7) the FMLA claims are dismissed with leave to replead. Otherwise, Defendants' application is denied. Plaintiff shall file and serve any proposed amended complaint within thirty days of the date of this Decision and Order.

SO ORDERED.

Dated:        January 7, 2010
              Rochester, New York

                                    ENTER:

                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge