UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CATHERINE CARLSON,

                    Plaintiff,

          v.

GENEVA CITY SCHOOL DISTRICT, et al.,

                    Defendants.

_____

<u>DECISION & ORDER</u>

08-CV-6202CJS

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Catherine Carlson ("Carlson") filed the instant action against defendants alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act, the New York State Human Rights Law and the Family Medical Leave Act.  (Docket # 1).  Carlson alleges that defendant David D. Pullen sexually harassed her and that defendants retaliated against her by, *inter alia*, demoting her after she complained about the harassment.  (*Id*.).

Currently pending before this Court are several discovery motions by the parties. Carlson has moved for protective orders seeking to prohibit defendants from deposing her or conducting any further discovery.  (Docket ## 59, 74).  Defendants have moved to extend the discovery deadline and to compel Carlson's and her ex-husband's depositions, as well as the production of records from certain health care providers.  (Docket # 78).  In addition, defendants seek to preclude Carlson from presenting any evidence regarding her alleged emotional distress

as a sanction for failing to provide those medical records.  (*Id.*).[1]  The following constitutes this

Court's decision and order on the pending motions.


## FACTUAL BACKGROUND

The discovery deadline has been amended four times in this action, the most

recent deadline having expired on September 30, 2010.  (Docket ## 36, 38, 43, 50).  In support of

her motions for protective orders and in opposition to defendants' motions for further discovery,

Carlson contends that defendants have been dilatory and have not conducted discovery with the

requisite diligence.  Accordingly, I will summarize the relevant facts concerning the parties'

conduct during discovery.


## I.  Requested Depositions

I turn first to Carlson's deposition and the deposition of her ex-husband.  The

parties first began negotiating a deposition date for Carlson in March 2010.  (Docket # 79,

Ex. S).  After much dialogue between the parties, on July 2, 2010, defendants noticed Carlson's

deposition for July 28, 2010.  (Docket # 79, Ex. B).  The day before the deposition was to take

place, on July 27, 2010, defense counsel canceled[2] the deposition because they had not received

---

[1]  Plaintiff has also moved to strike defendants' reply to their motion on the basis that it contains new factual assertions not included in the original motion.  (Docket # 106).  For the reasons discussed on the record on December 14, 2010, plaintiff's motion to strike defendants' reply is denied.  Specifically, the factual assertions made in defendants' reply address questions this Court posed to the defendants in an earlier argument concerning their diligence in seeking a subpoena from the District of Massachusetts.  In addition, I permitted plaintiff to file a sur-reply, which she has done.  (Docket # 116).

[2]  The email cancelling the deposition also stated, "A letter is forthcoming from [counsel] which will further explain our position and reason for *adjourning* tomorrow's examination."  (Docket # 61, Ex. B) (emphasis added).

Carlson's medical records.  (Docket ## 61, Ex. B; 79, Ex. L).  Defendants did not attempt to reschedule Carlson's deposition until September 10, 2010.  By letter of that date, defendants proposed that Carlson be deposed on September 23, 2010, the day on which depositions of certain defendants had already been scheduled.  (Docket # 79, Ex. L).  Plaintiff refused to reschedule those depositions.  (Docket # 57, Ex. D).  On September 21, 2010, defendants then served a notice of deposition for Carlson for September 23, 2010.  (Docket # 61, Ex. A). Plaintiff filed the instant motion for a protective order on September 22, 2010.  (Docket # 59).

In addition, defendants seek to depose Carlson's ex-husband, Craig, concerning Carlson's allegation that emotional distress from defendants' treatment negatively affected her marriage, ultimately resulting in divorce.  (Docket # 94 at ¶ 21).  Defendants did not raise the issue of deposing Carlson's husband's until September 21, 2010 – nine days prior to the expiration of the discovery period – at which time counsel also raised the issue of deposing a third-party witness.  (Docket # 94, Ex. O).  On September 27, 2010, plaintiff advised defendants that she did not oppose the deposition of Craig Carlson.  (Docket # 94 at ¶ 26).  On September 24, 2010, defendants noticed the deposition of the third-party witness, which then took place on September 29, 2010.  (*Id*.).  On October 18, 2010, defendants noticed Craig Carlson's deposition for November 19, 2010.  (Docket # 72).  Because the notice was served after the discovery deadline, this Court ordered defendants to file a motion in the event that they wished to pursue deposing Craig Carlson.  (*Id*.; Docket # 73).

Defendants then filed the instant motion to compel the deposition of Craig Carlson and for reconsideration of this Court's October 21, 2010 order requiring them to obtain leave of the court to depose him.  (Docket # 78).

## II.  Mental Health Records

### A.  Smith

Plaintiff also has moved for a protective order to prevent defendants from enforcing a subpoena issued by the District of Massachusetts and served upon Carlson's former mental healthcare provider, Christine E. Smith ("Smith"), who treated Carlson during the time period relevant to the complaint.  (Docket # 74).[3]

On September 9, 2009, plaintiff advised defendants that although she had signed an authorization for the disclosure of her records, Smith was unwilling to provide them.  (Docket # 75 at ¶ 9).  Carlson subsequently provided defendants with contact information for Smith on September 28, 2009.  (Docket # 69, Ex. M).  On June 8, 2010, the parties agreed that "defendants [would] seek and plaintiff [would] not . . . oppose a Court-ordered subpoena directing production of [plaintiff's medical] records."  (Docket # 49 at ¶ 7).  Carlson again provided contact information for Smith on June 23, 2010.  (Docket # 52).

On July 28, 2010, the parties had a conference with this Court to address the issue of obtaining records from Smith.  (*Id.*).  This Court advised defendants that they were free to subpoena those records pursuant to Rule 45 of the Federal Rules of Civil Procedure.  (*Id.*).  On August 4, 2010, this Court received a letter from defendants' counsel requesting the issuance of a subpoena.  (Docket # 96 at 6).  On August 25, 2010, chambers staff advised defendants' counsel that the subpoena needed to issue from the District of Massachusetts, where the records were located.  (*Id.* at 7).

---

[3]  This motion also sought to quash the subpoena.  (Docket # 74).  As I discussed on the record on November 10, 2010, the more appropriate relief to seek from this Court is a protective order prohibiting the deposition.  (Docket # 96 at 3-5).

4

Defendants did not obtain the subpoena from the District of Massachusetts until October 13, 2010.  (Docket # 74, Ex. D).  In response, Smith represented that she no longer possessed any subpoenaed records because all of her New York records were destroyed following her move to Massachusetts.  (Docket # 79, Ex. H).

At motion argument on November 2, 2010, this Court directed defendants to provide additional information regarding what, if any, steps were taken to obtain and serve the subpoena between August 25, 2010 and October 13, 2010.  (Docket # 96 at 8-9).  In response, defendants have submitted affirmations from two of their attorneys, which describe their work on this case, beginning with the departure of an associate who had been working on this case, and the hiring of a new associate on August 31, 2010.  (Docket # 101).  Between August 31, 2010 and September 22, 2010, that new counsel reviewed files and moved for admission to the Western District of New York.  (*Id*. at 2-3).  Counsel began researching the subpoena on September 22, 2010, including placing numerous telephone calls to various clerk's offices in the District of Massachusetts and attempting to find a Massachusetts attorney to sponsor counsel for admission *pro hac vice*.  (*Id*. at 4-6).  These efforts ultimately proved to be unnecessary, and eventually counsel was able to issue and serve the subpoena without assistance of the court.  (*Id*. at 7).

## B.  Other Providers

Finally, defendants also seek production of additional records from Carlson's healthcare providers Karen Brennan ("Brennan") and Mark Hedgepath ("Hedgepath").  On August 5, 2009, Carlson provided defendants with executed authorizations to release those records.  (Docket # 94, Ex. T).  On September 9, 2009, Carlson notified defendants that "two

other care providers" (referring to Brennan and Hedgepath) had not responded and represented that Carlson would supplement her production when they did so.  (Docket # 69, Ex. L).  Neither party pursued the records thereafter until defendants cancelled the July 28, 2010 deposition on the basis that they did not possess Carlson's medical records.

In September 2010, Carlson contacted Brennan and Hedgepath once more. (Docket # 94 at ¶ 15).  On September 6, 2010, Brennan provided a written narrative describing her treatment of Carlson, but refused to provide her treatment records.  (*Id*. at ¶ 16; Docket # 90). Carlson again received no response from Hedgepath.  (Docket # 94, Ex. V).  On October 26, 2010, nearly a month after the close of discovery, Carlson supplemented her production by providing Brennan's written summary of her treatment.  (*Id*.).

## DISCUSSION

Resolution of the issues presented in these motions turns on whether the parties have demonstrated good cause, measured by different standards, for the relief they have requested.  I turn first to plaintiff's request for a protective order.

## I.  Protective Order

A party may move for a protective order in order to limit or prohibit discovery. Fed. R. Civ. P. 26(c).  Rule 26(c) provides that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  *Id*.  *See Centeno-Bernuy v. Becker Farms*, 219 F.R.D. 59, 61 (W.D.N.Y. 2003) ("once the party seeking discovery has established that the demand seeks relevant information, the

burden is upon the party seeking non-disclosure or a protective order to show good cause")
(internal quotation omitted) (citing *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir.
1992); *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981)).  In order
to demonstrate good cause, a party must establish that the proposed discovery "will result in a
clearly defined, specific and serious injury."  *In re Sept. 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y.
2009) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y.
2006)).  *See also AMW Material Testing, Inc. v. Town of Babylon*, 215 F.R.D. 67, 72 (E.D.N.Y.
2003) ("[t]o show good cause, particular and specific facts must be established rather than
conclusory assertions"); *Blum v. Schlegel*, 150 F.R.D. 38, 41 (W.D.N.Y. 1993).

        I find that Carlson has failed to demonstrate good cause for any protective order
because she has failed to articulate any harm she would experience from any of the discovery she
opposes.  Specifically, Carlson has not identified any prejudice or burden from sitting for a
deposition or from the deposition of her ex-husband.  Carlson has further failed to identify any
potential injury or prejudice were defendants permitted to pursue her mental health records from
Smith, Brennan or Hedgepath.  Rather, she contends that defendants' lack of diligence in
pursuing discovery should bar them from doing so now.  (Docket ## 60 at 2-5; 68 at 10).  Lack of
diligence by the other side, standing alone, does not amount to good cause for a protective order.[4]
Accordingly, I deny Carlson's motion for a protective order.  Rather, I address below whether
defendants have demonstrated good cause to reopen the discovery period.

---

[4] Additionally, in a letter dated October 25, 2010, defendants advised plaintiff's counsel that they had made
a Freedom of Information Law ("FOIL") application to the Dundee School District for records relating to plaintiff's
husband.  To the extent that plaintiff seeks a protective order preventing defendants from pursuing any FOIL
requests, that motion is denied.  This Court may not prohibit defendants from seeking information that is publicly
available.  Should defendants obtain this information and seek to present it at trial, plaintiff, of course, is free to seek
any judicial relief to which she believes she is entitled.

## II.   Extension of the Discovery Deadline

I turn next to defendants' motion to extend the discovery period in order to depose Carlson and her ex-husband and to pursue Carlson's medical records.

Rule 16(b) of the Federal Rules of Civil Procedure provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *Arnold v. Krause, Inc.*, 232 F.R.D. 58, 65 (W.D.N.Y. 2004) (no good cause to modify scheduling order to extend discovery when counsel made no attempts to conduct discovery until after deadline had expired), *aff'd*, 233 F.R.D. 126 (W.D.N.Y. 2005).  Good cause depends on the diligence of the moving party in seeking to meet the scheduling order.  *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003).  The Second Circuit has held that the discovery period should not be extended when a party has had ample opportunity to pursue the evidence during discovery.  *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) ("trial court may properly deny further discovery if the non-moving party has had a fully adequate opportunity for discovery"); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927 (2d Cir. 1985) (denying further discovery because plaintiff had "ample time in which to pursue the discovery that it now claims is essential").  *See also* Fed. R. Civ. P. 26(b)(2)(C)(ii) (court "must" limit scope of discovery where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action").

Turning first to Carlson's deposition, the record establishes that in March 2010 defendants began negotiating with Carlson's counsel to set a date for the deposition.  Her deposition was eventually noticed in early July for July 28, 2010.  Defendants then adjourned the deposition without date because they had not obtained Carlson's medical records.  Thereafter, the

associate working on defendants' case left counsel's law office and a new associate did not begin work until late August.  On September 10, 2010, defendants proposed that Carlson's deposition be scheduled on September 23, 2010 – the day on which depositions of various defendants had already been scheduled.  On September 20, 2010, defendants noticed Carlson's deposition for September 23, 2010.

On this record, I find that defendants acted with sufficient diligence in pursuing Carlson's deposition to justify allowing that deposition to proceed.  Carlson has been on notice since March 2010 that defendants intended to depose her; but for Carlson's failure to produce requested medical records (discussed *infra*), that deposition would have occurred on July 28, 2010.  Although defendants' next attempt to schedule the deposition did not occur until a little more than a month later and did not provide twenty-one days' notice as required by Local Rule 30(a),[5] such conduct is not fatal to a showing of good cause.  *See Jin-Jo v. JPMC Specialty Mortg. LLC*, 2011 WL 3321295, *2 (W.D.N.Y. 2011) (questioning applicability of Local Rule 30(a) notice requirement where parties had previously agreed to deposition).  Counsel for defendants is directed to confer with plaintiff's counsel to agree upon an acceptable date for the deposition and to advise this Court in writing of such date by no later than **October 7, 2011**.

I reach a contrary result with respect to Craig Carlson's deposition.  The record reveals that defendants did not raise the prospect of his deposition until the eve of the discovery deadline, on September 21, 2010.  Even when plaintiff notified defendants on September 27,

---

[5]  Rule 30 of the Federal Rules of Civil Procedure provides that a party seeking to conduct a deposition must "give reasonable written notice to every other party."  Fed. R. Civ. P. 30(b)(1).  The twenty-one day notice period provided by the Local Rules may be modified by agreement of the parties or order of the court.  Local Rule 30(a).

2010 that she did not oppose the deposition, defendants did not serve a deposition notice until October 18, 2010, after the discovery deadline had passed.  I find that defendants have not established diligence where they waited until nine days prior to the discovery deadline to raise the issue and did not notice the deposition until after the deadline had passed.

I further find that defendants did not act diligently in seeking to subpoena Smith's records.  Defendants were notified in September 2009 that Smith refused to produce her records and were provided her contact information in order to pursue legal remedies.  In June 2010, Carlson agreed not to oppose a subpoena of Smith's records.  The matter was discussed with this Court again in July 2010.  Defendants then waited until August 2010 before seeking a subpoena from this Court.  After being notified later that month that the subpoena needed to issue from the District of Massachusetts, no subpoena was obtained until October 13, 2010.  Although much of the delay resulted from the change in counsel, a delay attributed to a change in counsel does not constitute good cause because new counsel is "bound by the actions of their predecessor." *Glover v. Jones*, 2006 WL 3207506, *4 (W.D.N.Y. 2006), *reconsidered on other grounds*, 2007 WL 87623 (W.D.N.Y. 2007).  Nor does a mistake or oversight by counsel excuse the delay. *Davidowitz v. Patridge*, 2010 WL 1779279, *4 (S.D.N.Y. 2010) (oversight by prior counsel was not an excuse for delay; "litigants are generally 'bound by the professional conduct of the attorneys they choose to represent them'") (quoting *Mast Indus., Inc. v. Mann*, 1991 WL 12359, *1 (S.D.N.Y. 1991)); *Michael Grecco Photography, Inc. v. Everett Collection, Inc.*, 2008 WL 4580024, *2 (S.D.N.Y. 2008).  Moreover, while the associate assigned to the case changed, defendants' principal counsel remained unchanged.  (*See* Docket # 101, Ex. A).

10

Here, the issue of Smith's recalcitrance to provide records was well-known to and discussed by both parties in September 2009 and again in June 2010, yet no subpoena issued until October 2010.  On this record, defendants simply have failed to establish that they acted with the requisite diligence.

### III.   <u>Brennan and Hedgepath Medical Records</u>

Finally, I address whether Carlson should be required to produce her medical records from Brennan and Hedgepath.  I determine that she should.

Under Rule 34 of the Federal Rules of Civil Procedure, "[i]f the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in possession of a non-party."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) (quoting *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994)).  This holding extends to medical and counseling records.  *See Safeco Ins. Co. of Am. v. Vecsey*, 259 F.R.D. 23, 28-29 (D. Conn. 2009).

Further, Rule 26(e) provides that a party who has responded to a request for production must supplement or correct its disclosure or response:

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e).  Supplementation "should be made at appropriate intervals during the

discovery period, and with special promptness as the trial date approaches."  Fed. R. Civ. P. 26,

advisory committee's note (1993).  In addition,

> [t]he duty to supplement applies whether the corrective information
> is learned by the client or the attorney, and extends not only to
> newly discovered evidence, but to information that was not
> originally provided although it was available at the time of the
> initial disclosure or response.

*American Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States*, 2009 WL 1617773, *5

(E.D.N.Y. 2009) (internal citations and quotations omitted).  "A party may not free itself of the

burden to fully comply with the rules of discovery by attempting to place a heretofore

unrecognized duty of repeated requests for information on its adversary."  *Arthur v. Atkinson*

*Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995) (discussing duty to supplement

disclosures under Rule 26(e)).

   Carlson does not dispute her duty to supplement her production; in fact, Carlson

contacted Brennan and Hedgepath at the beginning of September 2010 in an effort to do so.

Carlson obtained a treatment summary from Brennan on September 6, 2010, although Brennan

otherwise refused to provide copies of treatment records.  Carlson did not produce Brennan's

summary or otherwise notify defendants of Hedgepath's unresponsiveness until the end of

October 2010, after the close of discovery.

   I find that Carlson's duty to supplement requires her to execute new

authorizations for Brennan and Hedgepath's records.  In addition, because of Brennan's stated

refusal to produce records, defendants shall be permitted to submit to this Court a proposed order

requiring Brennan to produce those records.  Defendants shall provide the proposed order to

counsel for Carlson for review and approval by no later than **September 30, 2011**, and to this Court by no later than **October 7, 2011**.

I deny defendants' motion for an order precluding Carlson from presenting any evidence relating to her emotional distress because I find that such a remedy is unduly harsh. "Preclusion is a harsh sanction preserved for exceptional cases where a requested party's failure to provide the requested discovery results in prejudice to the requesting party." *Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 235 (W.D.N.Y. 1998) (denying motion for sanctions because movant had not demonstrated prejudice caused by delay in discovery response) (citing *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988); *Softel, Inc. v. Dragon Med. and Scientific Commc'ns, Inc.*, 1990 WL 164859, *5-6 (S.D.N.Y. 1990)).

## CONCLUSION

For the reasons discussed above, plaintiff's motions for protective orders **(Docket ## 59, 74)** are **DENIED**.  Defendants' motion to extend the discovery deadline **(Docket # 78)** is **GRANTED** for the limited purpose of deposing Carlson and obtaining medical records from Brennan and Hedgepath.  Defendants' motion to preclude Carlson from presenting evidence of emotional distress and for leave to depose Craig Carlson **(Docket # 78)** is **DENIED**.  Defendants' motion for reconsideration of my October 21, 2010 order **(Docket # 78)** is

13

**DENIED**.  Finally, plaintiff's motion to strike defendants' reply **(Docket # 106)** is **DENIED**.

**IT IS SO ORDERED.**

                                      *s/Marian W. Payson*
                                              MARIAN W. PAYSON
                                  United States Magistrate Judge

Dated: Rochester, New York
           September  19  , 2011